UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JESSICA WASHINGTON,

Plaintiff,

v.

THURGOOD MARSHALL ACADEMY,

Defendant.

Civil Action No. 03-2570

(CKK/JMF)

**MEMORANDUM OPINION**

This case has been referred to me by Judge Kollar-Kotelly pursuant to LCvR 72.2(a) in order to resolve several discovery motions. Four motions are now ripe and ready for resolution. For the reasons stated herein, plaintiff's Motion to Compel Defendant to Answer Interrogatories and Produce Documents and for Sanctions [#28/29/30] ("Pl.'s Mot. to Comp.") is stricken; defendant's Motion to Quash the Subpoenas Issued to End-to-End Solutions and D.C. Public Schools [#33] ("Def.'s Mot. to Quash End-to-End") and Motion to Quash the Subpoena That Was Issued to the District of Columbia Government Office of Unemployment Compensation [#34] ("Def's Mot. to Quash Unemployment") are granted in part and denied in part; and plaintiff's Motion to Quash and for a Protective Order Regarding Three Notices of Depositions and Subpoenas Regarding the Production of Documents [#37/40] ("Pl.'s Mot. to Quash") is granted in part and denied in part.

1

**BACKGROUND**

Plaintiff, Jessica Washington, brings this action against her former employer, Thurgood Marshall Academy ("TMA"), alleging breach of her employment contract, misrepresentation, wrongful discharge, and retaliation.  Complaint ¶ 2.  Specifically, plaintiff alleges that TMA unilaterally modified the nature and extent of her job duties inconsistent with TMA's pre-contract representations and terminated her from her position without cause.  Id. ¶ 48, 56.  Furthermore, plaintiff alleges that TMA terminated her due to her advocacy on behalf of students and parents regarding their rights under federal laws governing the school.  Id. ¶ 72.

From 2001 to 2002, plaintiff worked as the Special Education Coordinator for Friendship Edison Collegiate Academy.  Plaintiff found that this position gave her little time to spend with her young daughter.  Id. ¶ 8.  Plaintiff responded to an advertisement by TMA in the *Washington Post* for a teaching position and, after negotiations, received a job offer and accepted.  Id. ¶ 10-17.

Plaintiff contends that, over time, TMA increased and expanded her duties beyond what was agreed upon and that TMA was not complying with requirements under federal IDEA laws.  Id. ¶ 23-25.  At a meeting with TMA officials, plaintiff asked for an increase in her salary commensurate with her new responsibilities.  Id. ¶ 25.  On December 20, 2002, approximately six weeks after Washington met with TMA officials, she again met with a TMA official who told her that TMA would not increase her salary and that, if she did not resign, she would be terminated.  Washington stated that she would not resign unless given her salary for the next ninety days, which TMA refused to do, and she was then terminated.  Id. ¶ 32-33.

Washington applied for unemployment compensation in the District of Columbia, and

despite TMA's objections that she had voluntarily resigned, she was awarded unemployment benefits. Id. ¶ 36-37.

On January 26, 2005, plaintiff issued a subpoena duces tecum to the D.C. Office of Unemployment Compensation and, on January 28, 2005, issued subpoenas duces tecum to End-to-End Solutions for Public Education and D.C. Public Schools. On February 9, 2005, defendant filed motions to quash these subpoenas.

On February 1, 2005, defendant issued subpoenas and Notices of Records Depositions to the Law Office of Donovan W. Anderson, Woodland Job Corporation, and Friendship Edison Collegiate Academy. These entities are plaintiff's recent employers both before and after TMA. On February 22, 2005, plaintiff filed a motion to quash these subpoenas and a motion for a protective order.

## DISCUSSION

**I.      Legal Standard**

In general, a party is entitled to discover information if the information sought appears "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Additionally, a party may discover information that is not privileged and "is relevant to the claim or defense of any party." Id. Relevance for discovery purposes is broadly construed. See, e.g., Burlington Ins. Co. v. Okie Dokie, Inc., 368 F. Supp. 2d 83, 86 (D.D.C. 2005) (citations omitted).

When moving for a protective order to limit discovery, the movant must establish good cause "by demonstrating the specific evidence of the harm that would result." Jennings v. Family Management, 201 F.R.D. 272, 275 (D.D.C. 2001). The burden is on the movant to establish that

a protective order should be granted, Fonville v. District of Columbia, No. CIV. A.02-2353, 2005 WL 1244816, at *1 (D.D.C. May 25, 2005), or that a subpoena duces tecum should be quashed, U.S. v. Intern. Bus. Mach. Corp, 83 F.R.D. 97, 104 (S.D.N.Y. 1979) (citations omitted). Furthermore, a party seeking a protective order prohibiting deposition testimony or document production must establish good cause and a specific need for protection, as opposed to simply making conclusory or speculative statements. Alexander, 186 F.R.D. at 75 (citations omitted).[1] "The moving party has a heavy burden of showing 'extraordinary circumstances' based on 'specific facts' that would justify such an order." Id.

A party generally lacks standing to challenge a subpoena issued to a third party absent a claim of privilege, proprietary interest, or personal interest in the subpoenaed matter. United States v. Nachamie, 91 F. Supp. 2d 552, 559 (S.D.N.Y 2000) (citations omitted); Chiperas v. Rubin, No. CIV.A.96-130, 1998 WL 765126, at *2 (D.D.C. Nov. 3, 1998) (citations omitted). A motion to quash, or for a protective order, should generally be made by the person from whom the documents or things are requested. 9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2459 (2d ed. 1995).

**II.    Plaintiff's Motion to Compel**

Pursuant to Local Rule 7(a), each motion shall include or be accompanied by a statement of the specific points of law and authority that support the motion. Plaintiff's Motion to Compel Defendant to Answer Interrogatories and Produce Documents and for Sanctions is not accompanied by a supporting memorandum. Thus, plaintiff has failed to comply with this rule,

---

[1] Good cause exists under Fed.R.Civ.P. 26(c) when justice requires the protection of a person from annoyance, embarrassment, oppression, or undue burden or expense.

and without notice of the specific bases for plaintiff's motion, defendant has not had an adequate or fair opportunity to respond. Accordingly, plaintiff's motion, the opposition thereto, and the reply will be stricken.

### III.    Defendant's Motions to Quash the Subpoenas

Plaintiff seeks documents and records from three entities – End-to-End Solutions, D.C. Public Schools, and the D.C. Office of Unemployment. All of these entities are non-parties and have not challenged the subpoenas. Defendant has moved to quash these subpoenas based on concerns regarding relevance and possible infringement of privacy rights of third parties not involved in this litigation.[2]

None of these non-parties has challenged the subpoenas, and absent a privilege, personal interest, or proprietary interest, defendant has no standing to seek to quash, under Federal Rule of Civil Procedure ("Rule") 45, a subpoena issued to a non-party. Defendant has not addressed the standing issue and has claimed no privilege or interest in the subpoenaed information.

The Court need not address the standing issue, however, as defendant, as a party to this action asserting no privilege, proprietary interest, or personal right to the information, should have moved for a Rule 26(c) protective order. The Court therefore deems defendant's motions to quash as, in the alternative, motions for a protective order, and will evaluate the motions according to the standard enunciated in Rule 26, including whether the information sought is

---

[2]LCvR7(m) states that before filing any nondispositive motion, counsel should attempt to confer and make a good-faith effort to determine if there is any opposition and to narrow the areas of disagreement. Defendant claims to have left a phone message for plaintiff, which was not returned. Discussion between the parties regarding this motion should have occurred before it was filed, and such discussion should have been noted in defendant's motion. Unfortunately, this did not happen.

relevant to any claims or defenses raised in this case.

    **A.    Subpoena to End-to-End Solutions**

Plaintiff issued a subpoena to End-to-End Solutions for "any and all records, documents, files, notes, contracts, proposals, letters of understanding, invoices, correspondence, e-mails, policies, payment records, and any other document as it relates, pertains, concerns or involves Public Charter School Thurgood Marshall Academy's compliance with IDEA or anything else." Def's Mot. to Quash End-to-End, Ex. A, at 1.

End-to-End Solutions is a company hired by defendant for support and compliance services in order to help manage TMA's special education program. Plaintiff's Response and Opposition ("Pl's Opp'n"), Ex. 1, at 1. Plaintiff seeks records from End-to-End Solutions in order to gather evidence regarding TMA's compliance with federal IDEA laws governing defendant's school. Id. at 9.

Defendant argues that TMA's actual compliance with IDEA laws is irrelevant – the only relevant question is whether TMA terminated plaintiff in retaliation for the voicing of concerns about compliance. Def's Mot. to Quash End-to-End, at 5.

Defendant also argues that the document request in the subpoenas is overbroad and encompasses irrelevant information. Furthermore, defendant argues that disclosure of such information would violate the privacy rights of individuals not parties to this litigation.

The discovery of records regarding TMA's actual compliance with IDEA is reasonably calculated to lead to the discovery of admissible evidence. The records may be relevant to the defendant's intent and state of mind at the time of plaintiff's termination. If, in fact, TMA was not in compliance, then the claim of retaliation may have more force – employers sometimes

wrongfully terminate "whistle blowers" due to their airing of company misconduct. Defendant's motive to retaliate may be greater if plaintiff's concerns were in fact true. On the other hand, if TMA was in compliance, then the claim that they terminated a "whistle blower" may ring hollow.

While records regarding compliance with IDEA are relevant and discoverable, the End-to-End subpoena is overbroad. Plaintiff's request for all records regarding TMA's compliance with IDEA or "anything else" has no limiting principle whatsoever. Thus, discovery will be limited to records that pertain, relate to, or discuss TMA's possible violations of IDEA.

Furthermore, disclosure of these documents may infringe the privacy rights of people not involved in this litigation. Discovery will therefore be subject to the following conditions. Documents produced and other information gleaned from the subpoena shall be used only in this case and not otherwise disclosed. In addition, any documents and pleadings filed with the court containing personal information of parties not subject to this litigation shall be redacted to exclude such personal information. The redacted versions will be filed on the public docket, and the unredacted versions will be filed under seal.

### B.   Subpoena to the D.C. Public Schools

Plaintiff issued a subpoena to D.C. Public Schools requesting production of "any and all records, documents, files, notes, investigations, complaints, evaluations, contracts, policies and assurances of Public Charter School Thurgood Marshall Academy's compliance with IDEA, memoranda, payment of monies of any kind or correspondence as they relate to Public Charter School Thurgood Marshall Academy." Def's Mot. to Quash End-to-End, Ex. B, at 1.

Plaintiff claims that, during her tenure at TMA, the school was a subsidiary of the D.C.

Public Schools (DCPS) and therefore TMA had to abide by all D.C. rules and regulations, as well as federal regulations. Pl.'s Opp'n, at 2. Furthermore, plaintiff claims that DCPS maintains a record of compliance with such rules and regulations and that it conducts an annual audit of the school to determine compliance. Id. at 2,10.

Defendant challenges the subpoena based on concerns regarding relevance and the privacy of third parties not part of this litigation. The discovery of DCPS records of compliance are, like the End-to-End Solutions records, reasonably calculated to lead to admissible evidence. For the same reasons that records of compliance at End-to-End Solutions are relevant to a retaliation claim, so are records of compliance kept by DCPS. The records may shed light on defendant's state of mind or intent. If the school was not in compliance with federal and local regulations, it may make a retaliation situation more likely than if TMA was in compliance with the laws.

Nevertheless, plaintiff's discovery request regarding DCPS files is overbroad. Plaintiff seeks records regarding "memoranda, payment of monies of any kind, or correspondence" as it relates to TMA. This information is irrelevant, and discovery will be limited to records that pertain, relate to, or discuss TMA's possible violations of IDEA and local D.C. regulations.

The subpoena to DCPS is also subject to the restraints indicated above regarding End-to-End Solutions. Discovery will therefore be subject to the following conditions. Documents produced and other information gleaned from the subpoena shall be used only in this case and not otherwise disclosed. In addition, any documents and pleadings filed with the court containing personal information of parties not subject to this litigation shall be redacted to exclude such personal information. The redacted versions will be filed on the public docket, and

the unredacted versions will be filed under seal.

      **C.**      **Subpoena to D.C. Office of Unemployment**

Plaintiff issued a subpoena to the D.C. Office of Unemployment for "any and all unemployment records, decisions, documents, hearings, proceedings, unemployment claims, unemployment claims decisions, unemployment appeal claims decisions of any and all former employees who were employed at the Public Charter School of Thurgood Marshall Academy." Mot. to Quash Unemployment, Ex. A, at 1.

Plaintiff seeks unemployment records in order to substantiate her claim that she was granted unemployment benefits despite TMA's objections that she resigned voluntarily. Pl's Opp'n at 8. Furthermore, plaintiff seeks unemployment records in order to establish a pattern of wrongful discharges by TMA of previous employees, and unemployment records may reveal other employees who applied for unemployment to which TMA objected. Id.

Defendant argues that discovery of these records is not aimed at relevant evidence and that the privacy rights of individuals not part of this litigation will be infringed. However, discovery of unemployment records is reasonably calculated to lead to the discovery of admissible evidence. Plaintiff may be able to establish a pattern of behavior by defendant and may be able to substantiate claims regarding plaintiff's own unemployment claim.

Nevertheless, plaintiff's request is overbroad and not limited in either time or scope. Plaintiff has offered to limit the scope of her request to the past five years. Id. Discovery will further be limited to only those records regarding plaintiff's unemployment claim and other unemployment claims involving TMA that were disputed by the defendant. This should narrow discovery to only those records involving possible patterns similar to the facts in the present case.

In addition, any documents produced in accordance with this subpoena will be subject to the same limitations and procedures identified above. The privacy rights of those individuals who have their employment files discovered need to be protected. Discovery will therefore be subject to the following conditions. Documents produced and other information gleaned from the subpoena shall be used only in this case and not otherwise disclosed. In addition, any documents and pleadings filed with the court containing personal information of parties not subject to this litigation shall be redacted to exclude such personal information. The redacted versions will be filed on the public docket and the unredacted versions will be filed under seal.

**IV.     Plaintiff's Motion to Quash and for a Protective Order**

While plaintiff, in her opposition to defendant's motions, objects to defendant's motions to quash subpoenas issued to non-parties on the grounds that defendant lacks standing, plaintiff does not assert any grounds for standing in its own motion to quash a Rule 45 subpoena. Nevertheless, plaintiff has also moved for a Rule 26(c) protective order, and the court need not address the standing issue for quashing a Rule 45 subpoena. Instead, the court will analyze this motion according to the standards applicable to Rule 26.

Defendant served notices of subpoenas to (1) the Law Office of Donovan W. Anderson, (2) Woodland Job Corporation and (3) Friendship Edison Collegiate Academy. From these employers, defendant seeks plaintiff's entire employment files. Pl's Mot. to Quash, Ex. 1, 2, 3, at 1.

Defendant seeks these records from plaintiff's other employers for several reasons. For plaintiff's jobs before working at TMA, defendant seeks to gather evidence regarding plaintiff's duties and responsibilities as "Special Education Coordinator" to see how these duties compare to

her duties at TMA. Defendant seeks to determine whether or not plaintiff believed she was being hired for the same position at TMA as she had at her previous places of employment. Additionally, defendant seeks to establish that plaintiff did voluntarily terminate previous jobs while school was still in session, contradicting plaintiff's deposition testimony. For plaintiff's employers subsequent to TMA, defendant seeks to gather evidence to determine what plaintiff represented as her title and responsibilities at TMA in order to establish what she believed her position to be. Defendant's Opposition to Plaintiff's Motion to Quash ("Def.'s Opp'n") at 3.

Plaintiff argues that none of the subpoenaed parties has personal knowledge of the underlying subject matter of the lawsuit. Furthermore, plaintiff argues that the subpoenas were served in an untimely manner. Pl.'s Mot. to Quash at 3, 4.

Regarding plaintiff's substantive arguments, discovery of plaintiff's employment records from her other employers is reasonably calculated to lead to admissible evidence. Defendant seeks to gather information regarding plaintiff's duties and responsibilities at her previous positions as Special Education Coordinator in order to compare those duties with her job at TMA. A change or lack of change in plaintiff's responsibilities may shed light on the parties' perspectives on the employment contract *ex ante*. Furthermore, defendant seeks to demonstrate that, despite plaintiff's protestations that she would not leave a teaching position mid-year, plaintiff did leave her previous jobs while school was still in session. If this is true, the information may inform defendant's cross-examination of plaintiff. Specific prior inconsistent conduct may be used to impeach a witness on cross-examination pursuant to Federal Rule of Evidence 608(b).

Regarding plaintiff's employers subsequent to TMA, discovery of her employment records

may shed light on what she believed her position at TMA to be. This is a breach of contract case and establishing the parties' understanding of the contract may be aided by discovering plaintiff's representations of what she believed her position to be at TMA.

While plaintiff's employment records are relevant, the subpoena is overbroad. Defendant should only be allowed to access records regarding the circumstances surrounding plaintiff's termination at her previous employers, records regarding plaintiff's duties and responsibilities at her previous employers, and plaintiff's representations of her position at TMA for her subsequent employers. Defendant is not entitled to plaintiff's entire employment file, but only the specific portions that may lead to admissible evidence.

Plaintiff further argues that the subpoenas were untimely. Pursuant to Rule 34(c), "a person not a party to the action may be compelled to produce documents and things or to submit to an inspection as provided in Rule 45." Fed. R. Civ. P. 34(c). Rule 45(3)(A)(I) states that a court shall quash or modify a subpoena if it "fails to allow reasonable time for compliance." Fed. R. Civ. P. 45(3)(A)(I).

Defendant served these subpoenas on February 28, 2005, twenty-seven days before the close of discovery. The depositions were scheduled for March 2, 2005, twenty-nine days after the subpoenas were served and two days after the close of discovery.

The subpoenas and notices of records depositions did allow a reasonable time for compliance. All three subpoenas were for document depositions only, and all three of plaintiff's former employers did not need to appear if they simply mailed the documents to defendant's counsel. Even if the individuals subpoenaed did actually appear for deposition, twenty-nine days was easily enough time to comply.

      The depositions were also scheduled two days after the discovery deadline. According to defendant, the scheduling sought to accommodate the individuals to whom the subpoenas were sent. Extending the discovery deadline without the presiding or magistrate judge's approval is improper. Given that the discovery deadline has passed and that no other deadlines have been set, however, the court will extend the close of discovery until August 22, 2005 *solely* for the purposes of complying with the subpoenas.

      An Order accompanies this Memorandum Opinion.

                                                              _____
                                                              JOHN M. FACCIOLA
                                                              UNITED STATES MAGISTRATE JUDGE

Dated: